## KAUT v. GERDEMANN *et al.*, *Appellants.*

DIVISION ONE.

**Fraud:** CANCELLATION OF DEED. A husband desiring to reimburse his wife for her money lost in his business transferred without consideration certain real estate to his partner in trust for the latter's wife, in the belief fraudulently created by such partner that a direct transfer by the grantor to his wife would be invalid, and with the understanding that the land would be conveyed to his wife on request. This agreement was repudiated by the partner, who claimed the property was conveyed as compensation for money of his own wife lost in the partnership business. Both wives consented to the use of their money in the business, and the evidence tended to show that the partner's wife knew of the agreement to reconvey. *Held,* in an action by the grantor's wife for that purpose, that the deed was properly set aside for fraud.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*H. B. Davis* for appellants.

(1) It clearly appears that Kaut obtained the money from Gerdemann upon Kaut's repeated and urgent solicitations and assurances that Mrs. Gerdemann "would not lose a cent; that he was going to sell his property," etc. (2) The theory of the plaintiffs that the deed executed to August Gerdemann was intended simply to establish a conduit through which the title should pass to Mrs. Kaut is not borne out by the form of the deed. (3) Plaintiff, Lavinia Kaut, has equity that a court of chancery can recognize. (4) The deed was regular, and in the form usual to accomplish its ostensible purpose. It was for

a sufficient consideration,—an indebtedness of William Kaut, the owner of the property, to Emma Gerdemann, the beneficiary in the deed. Lavinia Kaut, plaintiff, had no greater or better right or claim than Emma Gerdemann. A court of equity will not, without very weighty reasons, interpret a simple deed, executed in due form by competent parties, for a sufficient consideration, as incumbered with a secret trust. Such trusts are not favored; and the party seeking the aid of a court of equity must show an equity superior to that of the party against whom such interpretation is sought to be established. Neither of these conditions exists here; there are no weighty reasons for such interpretation, and the equity of defendant, Emma Gerdemann, is far superior to that of either of the plaintiffs.

*Lubke & Muench* for respondent.

(1) The prevention and correction of fraud is one of the original and chief offices of courts of chancery. It is one of the fundamental equity rules that a conveyance which, through either fraud or mistake, fails to express the true intent of the parties thereto will be set aside or reformed (as the case may require), in order to effectuate such intent. Kerr on Fraud & Mistake [Am. Ed.] pp. 50, 423; *Mellon v. Webster*, 5 Mo. App. 449; *Gottschalk v. Kircher*, ante, p. 170. (2) It is admitted on all sides that the sole purpose of the Kauts in making any conveyance was to transfer the property to Lavinia Kaut. By the deed, as now left, both Kauts have unintentionally conveyed to another their right or homestead, which could not have been reached by execution. *Davis v. Land*, 88 Mo. 436; *Kendall v. Powers*, 96 Mo. 142; *Grimes v. Portman*, 99 Mo. 229. And Mrs. Kaut has transferred her

inchoate right of dower and homestead, which she never intended to release, and which alone would have furnished sufficient consideration for a transfer to herself. Bump on Fraudulent Conveyances, 310; *Woodson v. Pool*, 19 Mo. 344; *Obernier v. Treseler*, 19 Mo. App. 520. (3) Worse still in the present status, by the fraudulent deed, Kaut and his representatives have warranted to discharge the prior incumbrance of $4,000, and to thus grant Mrs. Gerdemann a clear title to property worth $9,000 for an alleged debt of $3,600, now claimed, but never heard of when the conveyance was executed; all unintentionally.

BRACE, J.—On the fourteenth of September, 1887, William Kaut, then the husband of the plaintiff, Lavinia Kaut, executed and delivered a warranty deed, in which his wife, the said Lavinia, joined, conveying lots 8 and 9, block 73, of Thomas Allen's second addition to the city of St. Louis (for the recited consideration of $5,000) to the defendant, August Gerdemann, in trust for the sole and separate use of his wife, the said defendant, Emma F. Gerdemann, subject "to a certain deed of trust and the taxes for. the year 1888." On the twenty-second day of October, 1887, the said William Kaut, who has since died, and his wife, the said Lavinia Kaut, instituted this suit.

The petition charges in substance, that the said William Kaut being indebted to his wife in the sum of about $4,250, which she had loaned to him, of moneys belonging to her statutory separate estate, and being desirous of securing the payment of such indebtedness, agreed with her to convey the premises to her by deed, subject to said deed of trust in discharge thereof, but "the said August Gerdemann, designing and scheming to defraud plaintiff, Lavinia Kaut, out of the title to the said property, and to himself obtain

control and possession of the same, represented to plaintiffs that a conveyance of said property could not legally be made direct from plaintiff William to his wife, plaintiff Lavinia, but that, in order to render such conveyance valid and effectual, it would be necessary to interpose one or more third persons as conduits of said title; that if plaintiffs would first sign and execute a deed thereof to defendants the defendants would thereupon, at once, or upon demand, convey back the said property to plaintiff Lavinia, thus vesting the title to the same in her according to said agreement."

That thereupon the said August caused said deed of the fourteenth of September, 1887, to be written, and the said William and Lavinia Kaut, relying upon said representations and promises of the defendants, executed the same without any other or further consideration. That afterwards plaintiff Lavinia requested the said defendants to execute a deed to her of said premises in accordance with their said agreement, which they refused to do, but, in furtherance of the fraudulent scheme aforesaid, the said August had placed the same on record, and is now threatening to seize possession of said lands, and collect the rents thereof. Wherefore plaintiffs pray that the defendants may be declared to hold the title to said property to the use of the said Lavinia, and that they be required to convey the same to her, and that they be enjoined from taking possession of, or conveying the same to any other use, and from collecting the rents, issues and profits thereof, and for general relief.

Defendants, in their answer, admit the execution of the deed, deny all the other material allegations of the petition, and allege the truth of "the matter" to be, that the said William Kaut being indebted to the said defendant, Emma F. Gerdemann, in about the sum of $3,500, and being unable to pay the same, exe-

cuted the deed in question in full satisfaction of such indebtedness. The plaintiff replied, denying this allegation. The case was submitted to the court on the evidence, and the issues found for the plaintiff, the specific relief prayed for denied however, and a decree entered canceling the deed and the costs adjudged against the defendants from which decree and judgment they appeal.

It appears from the evidence that the plaintiff, Mrs. Lavinia Kaut, and the defendant, Mrs. Emma F. Gerdemann, are sisters; that Mr. Kaut was the owner in fee of the premises subject to the deed of trust mentioned in the conveyance at the time he and his wife executed the deed in question; that he acquired his title thereto November 3, 1879; that there were on the lots two two-story brick dwelling-houses, one of which was occupied by Mr. Kaut and his family as a homestead, and the other let to a tenant; that the premises were of the market value of $8,000 or $9,000; that the amount of the incumbrance upon the property was about $4,000; that, at the time of the execution of the deed, and for many years prior thereto, Kaut had been engaged in the commission business in the city of St. Louis under the firm-name of William Kaut & Co.; that the defendant, August Gerdemann, his brother-in-law, was at first in his employ as cashier and bookkeeper, and afterwards, on the first of January, 1880, was admitted to an interest in said concern under the following agreement: "It is herewith understood by William Kaut, trading in the firmname of William Kaut & Co., and August Gerdemann, that in consideration of twenty-eight hundred and sixty dollars ($2,860) in cash, paid unto and properly entered on the books, to the credit of August Gerdemann, the latter is to receive one-third of the net profits in lieu of a stipulated salary, said profits to be computed at the end of each year. It is further under-

stood that the said August Gerdemann is to continue to keep the books and attend to all other business as heretofore. It is also agreed that said August Gerdemann is allowed to draw out of the firm the sum of not to exceed $1,000 per year for the purpose of defraying living and other expenses."

Some time after this arrangment was made, probably in 1883 or 1884, but the exact time does not appear, the mother of Mrs. Kaut, Mrs. Gerdemann, died, leaving an estate of which the defendant, August Gerdemann, became the administrator; and as such the distributive shares of his wife and Mrs. Kaut in their mother's estate, amounting to about $4,000 each, came into his hands. The share of Mrs. Kaut was with her knowledge and consent paid over to Kaut and used in the business. The share of Mrs. Gerdemann was with her knowledge and consent retained by her husband, and the evidence tends to show that out of her moneys the sum of $3,670 was advanced by Gerdemann to Kaut, and went into the business. Gerdemánn made his final settlement in 1886.

The concern in 1887 seems to have met with some heavy losses, and became involved in a lawsuit, which was lost, and Kaut, in whose name the title was vested, commenced conveying the business property in payment of its debts. It is impossible to tell from the evidence what was exactly Kaut's financial condition in September, 1887; or the state of the accounts of either Kaut or Gerdemann on the books of the concern, but Kaut's condition was evidently one of embarrassment, and prior to the fourteenth of September, 1887, he had transferred to his creditors about all his property acquired for and in the business, leaving only the individual property in question in his name. About that time he conceived the idea of conveying this property

to his wife, in consideration of the money of hers which he had used in his business; and for this purpose had a Mr. Hull to prepare such a deed to her direct.

Gerdemann testifies that, "on the fourteenth of September, Kaut sent his little girl up to the office and requested me to send the porter up to Leon L. Hull & Co., that he had a deed there, and to tell the porter to bring it down. I thought there was something wrong that he wanted to make a deed to his wife." That he went himself, got the deed, and took it first to his friend, Mr. Hensler. The result of his consultation with Hensler was that they both went to a notary by the name of Nohl, to whom the deed was exhibited, and after some consultation with him Gerdemann evidently conceived the idea of preventing the conveyance to Mrs. Kaut from being executed, and of securing the execution of a deed by Mr. and Mrs. Kaut to himself for the benefit of his own wife, and entered upon the execution of this purpose by directing the notary to draw up the deed in question in its present form, and told him that he would call for him in the evening and they would go together down to Kaut's.

Gerdemann and Hensler then seem to have had an interview with Kaut at his home, in which they informed him that they had consulted a notary and that the deed prepared by Hull would not hold, being made by Kaut direct to his wife; that the transfer could not be made in that way, and that the deed must be made to Gerdemann's wife, to which Kaut assented with the understanding that "the property was to come back to him," that by Gerdemann's arrangement Nohl brought the deed prepared to Kaut's house that evening, Hensler also being present by Gerdemann's invitation.

Nohl testifies that in the absence of Mrs. Kaut, who was up stairs, he explained the contents of the deed to Mr. Kaut, but nothing was said about any

indebtedness from Kaut to Mrs. Gerdemann, or about the conveyance being made to secure or discharge any such indebtedness. Mr. Kaut asked if it could be reconveyed at any time and Nohl told him it could, but it could not be put in this deed.

Hensler testifies that: "Mr. Kaut said that he wanted this reconveyed, I told him that would have to be an after consideration, to make the deed legal and binding. Kaut signed and acknowledged the deed under these circumstances." Mrs. Kaut was not present at the interview between her husband and Gerdemann and Hensler, or when the conversation was going on between her husband and Nohl and Hensler, but was met in the hallway as she was coming into the back parlor, where the parties were, by Hensler, who told her that the Hull deed direct to her, was not legal, and asked her if she would not be willing to deed the property to her sister, who would deed it back to her; she said she would, and went in, signed and acknowledged the deed. A few days afterwards the Gerdemanns were requested to carry out the agreement, which they refused to do, and this suit was brought. This is substantially the case as presented even by the evidence for the defendants.

It is perfectly plain from the whole evidence that Mrs. Kaut and Mrs. Gerdemann had implicit confidence in their husbands, and they in each other, up to the date of this transaction; that both wives knew that their money was being used by their husbands in this business, and that it was so used with their consent; that the Kauts executed this deed without any consideration whatever, for the single purpose of legally carrying out their original object of vesting the title to the premises in Mrs. Kaut; that they were doing so for that purpose only, Gerdemann, his notary and his friend well knew, and it was by their machinations they

were induced to execute the deed to Gerdemann, and the evidence also tends to show that Mrs. Gerdemann knew that it was the understanding that the property was to be reconveyed to Mrs. Kaut.

Whatever the equities between Kaut and his wife and Mrs. Gerdeman may have been, this deed by means of which Mrs. Kaut was induced to beliewe she was going to receive security for her patrimony, and by which in fact she was deprived of her homestead and dower in the premises, was procured by artifice and fraud, and cannot stand for a moment in a court of equity; as a deed obtained under such circumstances never will, so long as such courts refuse to be governed by the principle that the end justifies the means, however reprehensible the means.

The chancellor did well to simply strike down this muniment of fraud, and leave the parties just where they would have been, had the deed never been executed, and the decree and judgment will be affirmed. All concur, except BARCLAY, J., absent.